UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                       CASE NO. 03-19459

GARY J. LANDRY                               SECTION "B"
DIANNE N. LANDRY

    Debtors                                               CHAPTER 7

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CLAUDE C. LIGHTFOOT, JR.
    Plaintiff                                            ADV.P. NO. 05-1071

V.

GARY & DIANNE LANDRY
    Defendants

## MEMORANDUM OPINION

This matter came on for trial on February 21, 2006 on a complaint under 11 U.S.C. § 727(d)(1) to revoke the discharge of Gary and Dianne Landry (the "debtors") filed by the Chapter 7 trustee, Claude C. Lightfoot, Jr. (the "trustee"). For the reasons set forth more fully below, the complaint is dismissed.

**I.**     **Background**

On December 9, 2003, the debtors filed a joint voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.[1] At issue in this case is a 1999 Harley Davidson motorcycle owned by the debtor husband at the date of filing of this bankruptcy petition. In their schedules the debtors listed a 2001 Chrysler Sebring and a 2003 Nissan

---

[1] Title 11 of the United States Code.

1

Altima in the space listed for "automobiles, trucks, trailers, and other vehicles and accessories."[2] The schedules further indicated that the Nissan had been repossessed on November 16, 2003. The debtors did not disclose anywhere in the original schedules that he or they owned the 1999 Harley Davidson motorcycle.[3] Claude Lightfoot, Jr. was appointed as the trustee in the case and a creditors' meeting was held on January 23, 2004 as required by § 341 of the Bankruptcy Code. The trustee testified at trial that the debtors did not mention ownership of the motorcycle at the creditors' meeting.

On February 19, 2004, the trustee received an anonymous letter that indicated the debtors were abusing the bankruptcy process and concealing assets.[4] Specifically, the letter mentioned a "fancy shinny (sic) motor cycle" owned by the debtors. Because there were no objections to discharge, on March 26, 2004 the court entered the customary, routine order discharging the debtors. On August 6, 2004, the trustee sent a letter to the

---

[2] See the Debtors' Schedule B, Case no. 03-19459 (P-1).

[3] The form petition and the schedules and statements attached are not typed but neatly block printed, which the testimony showed was done by Mrs. Landry. They contained errors in addition to the failure to include the motorcycle, viz., printing Richard Alvarez's name in the part of the form calling for certification and signature of a non-attorney bankruptcy petition preparer in accordance with 11 U.S.C. § 110. The petition was signed in the appropriate places by Richard Alvarez as attorney and by both Landrys as debtors.

[4] Exhibit 3. The court notes that the letter is brief. Its authorship was never determined even at the two trials held in this case, both involving the motorcycle. Everyone on the debtors' side of the case felt Mr. Alvarez's secretary, Jennifer Hampton, was the author. Ms. Hampton unequivocally testified that she did not write the letter. Because Ms. Hampton, employed as a legal secretary for Mr. Alvarez for almost 10 years, impressed the court as a refined, well educated legal secretary it appears unlikely that she authored the letter, which is crudely written and mistake filled. Fortunately, determining the identity of the author is not necessary to a decision in this case.

debtors inquiring into the anonymous report of the debtors' ownership of the motorcycle and addressing other matters relevant to the debtors' bankruptcy case.[5] On August 17, 2004, the debtors filed amended schedules that listed the motorcycle on Schedule B.[6] At the same time, the debtors amended their schedules to claim an exemption for the motorcycle under LSA R.S. 13:3881(A)(2).[7]

The trustee objected to the amendment of the debtors' schedules to claim the additional exemption for the motorcycle, and the court after an evidentiary hearing sustained that objection.[8] The trustee also filed a motion for turnover of the motorcycle, which the court granted, and the motorcycle was sold at auction by the trustee with the proceeds going to the debtors' estate for distribution to creditors. On March 23, 2005 the trustee filed this complaint to revoke the debtors' discharge under § 727(d)(1) of the Bankruptcy Code.

## II. Legal Analysis

Section 727(d)(1) of the Bankruptcy Code reads:

---

[5] Exhibit 4. The trustee's letter requested copies of the debtors' 2003 federal and state income tax returns. This leads the court to believe that the impetus for sending the letter was the debtors' failure to provide the tax returns, and that the trustee added the request for information relating to the anonymous letter as an afterthought. This would explain why the trustee allowed such a significant period of time to elapse between his receipt of the anonymous letter and his inquiry into the allegations contained in the letter.

[6] Exhibit 2.

[7] LSA R.S. 13:3881 is the state exemption statute applicable to bankruptcy cases filed in Louisiana pursuant to 11 U.S.C. § 522.

[8] See Order dated January 31, 2005.

> On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if-
> (1) such discharge was obtained through fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge.[9]

Thus, a party attempting to revoke a debtor's discharge under 727(d)(1) must show 1) the discharge was obtained through fraud of the debtor, 2) the party requesting the revocation did not know of the debtor's fraud until after the discharge was granted, and 3) grounds exist which would have prevented the debtor's discharge had they been known.[10]

The debtors in this case argue that the trustee is not entitled to proceed with this action to revoke the debtors' discharge because the trustee had knowledge of the debtors' alleged fraud before the deadline for objecting to the discharge, and that the trustee failed to act before that deadline. They further argue that even if the trustee is entitled to bring this action, their failure to schedule the motorcycle was a mistake, and they did not have the intent required to prove fraud under § 727. The trustee contends that although he received the anonymous letter that contained allegations that the debtors had not scheduled the motorcycle before the debtors' discharge was entered, he did not have confirmation that the debtors did indeed own the motorcycle until after the discharge had been entered. Therefore, argues the trustee, he is entitled to bring this action under § 727(d)(1). Further, the trustee argues that the debtors did act with fraudulent intent such

---

[9] 11 U.S.C. § 727(d)(1).

[10] *In re Hayes,* 127 B.R. 795 (Bankr. E.D.Tex. 1991).

that their discharge should be revoked.

The plaintiff requesting the revocation of a fraudulently procured discharge has the burden of proving all the facts upon which the revocation is conditioned by the statute, including the exercise of diligence in uncovering the facts.[11]  The elements of an objection to discharge under § 727 must be proved by a preponderance of the evidence.[12]  Additionally, the revocation of a discharge is construed strictly against the objector and liberally in favor of the debtor.[13]

**A.      The trustee's knowledge of the debtors' alleged fraud.**

The court first examines the requirement that the party requesting the revocation not know of the fraud until after the discharge was granted.  There are two lines of cases discussing the "did not know" requirement of § 727(d)(1).  The minority view, which the trustee urges that the court follow, construes the knowledge requirement leniently and holds that discovery occurs when the party seeking revocation obtains actual knowledge of the facts giving rise to the action.[14]  The majority view, relied on by the debtor, construes the knowledge requirement much more strictly and holds that knowledge in a §

---

[11] *In re Stein,* 102 B.R. 363 (Bankr.S.D.N.Y. 1989).

[12] *In re Beaubouef*, 966 F.2d 174 (5th Cir. 1992).  *See Grogan v. Garner,* 498 U.S. 279,111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

[13] *In re Brown,* 108 F.3d 1290 (10th Cir. 1997); *In re Adeeb,* 787 F.2d 1339 (9th Cir. 1986); *In re Adlman,* 541 F.2d 999 (2nd Cir. 1976); *Keeffe v. Natalie*, 337 B.R. 11, 13 (N.D.N.Y. 2006); *In re Jones*, 292 B.R. 555, 559 (Bankr. E.D.Tex. 2003).

[14] *In re Dietz,* 914 F.2d 161 (9th Cir. 1990); *In re Magnuson*, 113 B.R. 555 (Bankr. D.N.D. 1989); *In re Schweda*, 19 B.R. 499 (Bankr. M.D.Fla. 1982).

727(d)(1) revocation action occurs when the party seeking revocation first becomes aware of facts such that he is put on notice of a possible fraud.[15] This line of cases holds that the burden is heavily on the party seeking revocation to diligently investigate any possibly fraudulent conduct as soon as he becomes aware of facts indicating said conduct.[16]

The United States Court of Appeal for the Fifth Circuit, by whose decisions this court is bound, has not ruled on this issue so the court is inclined to follow the reasoning of the Eighth Circuit's *Mid-Tech Consulting* case and its progeny.[17] These cases require the party seeking revocation to investigate diligently any facts known to it before the discharge is granted. The rationale in these cases is that placing the burden of investigation on the party seeking revocation ensures that potentially fraudulent acts are investigated promptly. By encouraging a putative plaintiff in a revocation action to act immediately upon being placed on notice of a potentially fraudulent situation, the likelihood increases that these matters can be disposed of prior to the discharge being entered. This encourages efficient use of the court's time and promotes the resolution of discharge complaints in a timely manner. By allowing a party with knowledge of potential fraud to delay its investigation with no adverse consequences, the court risks

---

[15] *Mid-Tech Consulting, Inc., v. Swendra,* 938 F.2d 885, 888 (8th Cir. 1991); *In re Bowman*, 173 B.R. 922 (9th Cir. B.A.P. 1994); *Keeffe v. Natalie*, 337 B.R. 11 (N.D.N.Y. 2006); *In re Vereen,* 219 B.R. 691 (Bankr.D.S.C. 1997); *In re Kaliana,* 202 B.R. 600 (Bankr.N.D.Ill. 1996); *In re Cochard*, 177 B.R. 639 (Bankr.E.D.Mo. 1995).

[16] *Id.*

[17] *Id.*

promoting inefficiency in its caseload as well as uncertainty for debtors. Thus, if a party who might object to discharge decides to wait until after the discharge to bring its complaint, that party risks dismissal of its § 727(d)(1) action.[18] The better course of action for a party with a suspicion of fraud but needing more time to investigate is to file an application for enlargement of time in which to file an objection to the debtor's discharge.[19] This court endorses the view espoused in *Vereen* that:

> In a revocation action under § 727(d)(1), the plaintiff must show due diligence in investigating and responding to possible fraudulent conduct once he or she is aware of it or is in possession of facts such that a reasonable person in his or her position should have been aware of a possible fraud. This standard is consistent with the case law from other jurisdictions and is consistent with the goal of Chapter 7 to grant debtors a fresh start. This is not to say that a trustee is required to suspect that every debtor is committing fraud in his schedules. As a general rule, the trustee is entitled to rely on the truthfulness and accuracy of the debtor's schedules and is not required to assume that the debtor is lying. However, once the trustee is in possession of facts that would put a reasonable person on notice of a possible fraud, he has a duty to diligently investigate to determine if grounds exist for the denial of the Debtor's discharge and if so to timely file a complaint.[20]

At trial the trustee testified that he received the anonymous letter on February 19, 2004 that mentioned among other things that the debtors owned a motorcycle.[21] The trustee further testified that he serves as the Chapter 7 trustee in numerous cases, and that

---

[18] *In re Bowman,* 173 B.R. 922, 925 (9th Cir. B.A.P. 1994).

[19] See Bankruptcy Rule 4004(b).

[20] *In re Vereen,* 219 B.R. 691, 696 (Bankr. D.S.C. 1997)(internal citations omitted).

[21] No transcript was ordered for this trial, so the court's references to the testimony of any party at the trial refers to the audio recording made by the court.

7

he frequently receives various anonymous letters and phone calls that later turn out to originate from disgruntled creditors, ex-spouses or others. The trustee stated that when these types of complaints are anonymous, they often turn out to be invalid, and that he generally gives more weight to complaints that come from a verifiable source. The trustee also stated that while the anonymous letter he received in this case may have given rise to a certain amount of suspicion, he would not generally file a discharge complaint based on an anonymous letter like the one received in this case without further information. Finally, the trustee testified that he did not feel he had adequate information to pursue a discharge complaint in this case until after he sent the August 6, 2004 letter requesting further information to the debtors,[22] and they amended their schedules. The court notes, however, that the trustee gave no explanation as to why he waited five and one-half months after he had received the anonymous letter to send the letter requesting further information from the debtors.

      The court is sympathetic to the trustee's argument that the trustee handles numerous cases in this district and receives a large volume of mail related to those cases on a daily basis. Had the trustee acted promptly to follow up on the letter and been hindered in his inquiry by the debtor, or if the trustee had begun an immediate inquiry that took until after the discharge had been granted to complete, the court would be more inclined to find that the trustee had borne its burden of acting diligently to discover the

---

[22] Exhibit 4.

alleged fraud. But because the trustee waited for what the court considers to be an extended period of time to investigate, with no explanation other than that the trustee handles a large number of bankruptcy cases, the court cannot find that the trustee acted promptly with reasonable diligence. The court does not believe it would have required significant effort or time to send out a letter of inquiry, the sole action that the trustee took in this case, within the five week period between receipt of the anonymous letter on February 19, 2004 and the entry of the order discharging the debtors on March 26, 2004. It is undisputed that the debtors responded to the trustee's request to supply information within two weeks by amending their schedules to add the motorcycle, as an exempt asset, only 11 days after the trustee sent the letter of inquiry. Had the trustee sent the letter immediately after receiving the anonymous complaint, this matter could perhaps have been resolved before the discharge was entered.

Thus, the court finds that the trustee failed to meet his burden of proof by a preponderance of evidence that he diligently investigate any possibly fraudulent conduct as soon as he became aware of it as required by the *Mid-Tech Consulting* cses. Although the court finds that the trustee did not meet § 727(d)(1)'s requirement that he did not know of the fraud until after the discharge was granted, the court will address the remaining arguments concerning whether the debtors committed fraud sufficient to support a revocation of discharge.

**B.     The debtors' allegedly fraudulent actions.**

In order to revoke the debtor's discharge under § 727(d)(1), the acts by the debtor

9

must fit into one of the § 727(a) exceptions to discharge had the facts been known and a complaint filed prior to the discharge.[23] The court looks to the requirement that the debtors committed fraud such that their discharge should be revoked. Case law provides that the fraud required for a revocation of a discharge is fraud in fact or intentional misconduct by the debtor. A mistake of law or implied fraud is not sufficient.[24] The standard for finding fraudulent intent has been stated as follows:

> To find the requisite degree of fraudulent intent under § 727(d), the court must find the debtor knowingly intended to defraud, or engaged in such reckless behavior as to justify the finding of fraud. The requisite fraudulent intent or recklessness may be proven by evidence of the debtor's awareness of the omitted asset and by showing that the debtor knew that the failure to list the asset could seriously mislead the trustee or creditors or that the debtor acted so recklessly in not reporting the asset that fraud is implied. As direct evidence of the debtor's intent can rarely be found, the courts have relied on the inferences drawn from a course of conduct and all surrounding circumstances in finding fraudulent intent.[25]

Section 727(d) is viewed as an extreme remedy to be awarded only where the debtor's conduct was egregious.[26] The revocation of a debtor's discharge is a serious measure that should not be granted absent a clear finding of fraud in light of the serious consequences it imposes on the debtor.[27] Instead,

---

[23] *In re Heil*, 289 B.R. 897 (Bankr.E.D.Tenn. 2003).

[24] *In re Stedham,* 327 B.R. 889 (Bankr.W.D.Tenn. 2005).

[25] *In re Colish,* 289 B.R. 523, 541 (Bankr. E.D.N.Y. 2002).

[26] *In re Cochard,* 177 B.R. 639 (Bankr. E.D.Mo. 1995).

[27] *In re Kasden*, 209 B.R. 239 (8th Cir. B.A.P. 1997)(revocation is an extraordinary remedy); *In re Bowman*, 173 B.R. 922 (9th Cir. B.A.P. 1994).

> The purpose of a discharge in bankruptcy is to relieve an honest debtor from his financial burdens and to facilitate the debtor's unencumbered fresh start. The revocation of a discharge runs counter to this general policy, and provokes a calamity for a Chapter 7 debtor. When a Chapter 7 debtor's discharge is revoked, all of the debtor's debts are reinstated, and yet, all of the debtor's property having been previously liquidated, he is no longer possessed of any assets from which to pay these debts. Accordingly, the Code's revocation provision is construed strictly against the party requesting the revocation of a debtor's discharge and liberally in favor of its retention by the debtor.[28]

The intentional omission of assets from the debtor's schedules has been found to qualify as grounds for revocation of a discharge under § 727(d)(1).[29] While multiple inaccuracies are usually evidence of a pattern of reckless and cavalier disregard for the truth serious enough to supply the necessary fraudulent intent required by § 727(a)(4)(A), any single omission or error may be the result of an innocent mistake.[30]

A false oath has this effect since, full disclosure of assets and liabilities in the schedules required to be filed by one seeking relief under Chapter 7 is essential, because the schedules "serve the important purpose of insuring that adequate information is available for the Trustee and creditors without need for investigation to determine whether the information provided is true."[31] To establish a false oath under this section, the creditor must show that "(1) [the debtor] made a statement under oath; (2) the

---

[28] *In re Olmstead*, 220 B.R. 986, 993 (Bankr.D.N.D. 1998)(internal citations omitted).

[29] *In re Dubrowsky,* 244 B.R. 560 (E.D.N.Y. 2000); *In re Stedham,* 327 B.R. 889 (Bankr.W.D.Tenn. 2005).

[30] *Dean v. McDow,* 299 B.R. 133 (E.D.Va. 2003).

[31] *In re Pratt,* 411 F.3d 561 (5th Cir. 2005).

statement was false; (3) [the debtor] knew the statement was false; (4) [the debtor] made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case."[32] An omission of an asset can constitute a false oath.[33] Any debtor who files a Chapter 7 petition has a continuous, affirmative duty to disclose the following in a complete and accurate manner: (a) a list of creditors; (b) schedules of assets, liabilities, current income, and current expenditures; and (c) a statement of financial affairs.[34] False oaths may be in the form of either false statements or omissions on the schedules and statement of financial affairs or false statements by the debtor during the course of the bankruptcy proceedings.[35] A debtor can demonstrate his reckless indifference to the truth by failing to give full and complete disclosures in both his initial and amended Schedules and Statements of Financial Affairs.[36]

Complicating the facts of this case are the conflicting accounts of how the motorcycle came to be omitted from the debtors' schedules. The court notes that there are malpractice actions pending before this court involving the debtors' first and second bankruptcy attorneys, respectively Mr. Alvarez and Ms. McPherson.[37] Because the

---

[32] *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992).

[33] *Id.*

[34] *In re Coastal Plains, Inc.,* 179 F.3d 197, 208 (5th Cir. 1999).

[35] *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992).

[36] *In re Gartner,* 326 B.R. 357 (Bankr.S.D.Tex. 2005).

[37] These malpractice actions are case number 06-1071, Dianne Ladry et al. v. Richard Alvarez, and case number 06-1141 Landry et al. v. McPherson.

malpractice actions have not yet been heard by this court, nothing in this opinion should be taken by any party to those actions to represent the courts' views in either of those actions. The court only mentions the malpractice actions because the court's awareness of the malpractice actions colors the light in which the court views the testimony of the various witnesses for purposes of determining the outcome of this adversary proceeding.

At trial the debtors both testified that they did not schedule the motorcycle because Mr. Alvarez, their attorney at the time of filing, told them that they could save the motorcycle by either giving it to a relative or not listing it. In support of their testimony, the debtors also called Mrs. Landry's employer, Cameron Gamble, who testified that Mrs. Landry did tell him that Mr. Alvarez told her to omit the motorcycle from the schedules. The Landry's also called their second bankruptcy attorney, Mary McPherson, who testified that the Landry's had also told her they omitted the motorcycle from their schedules on the advice of Mr. Alvarez. The court notes, however, that both Ms. McPherson and Mr. Gamble also testified that Mrs. Landry did not tell them about this alleged conversation with Mr. Alvarez until after the trustee had inquired about the motorcycle.

The court rejects the debtors' testimony that Mr. Alvarez told them to omit the motorcycle from their schedules or to give it to a relative for several reasons. First, Mr. Alvarez testified under cross-examination that not only did he not tell the debtors to omit the motorcycle from the schedules, but that he did not discuss the motorcycle with the debtors at any time prior to the filing of the bankruptcy petition. Second, the debtors'

corroborating witnesses were not told that Mr. Alvarez had given the debtors this "advice" until after the debtors received the letter from the trustee requesting further information about the motorcycle. Third, the court does not accept the contention that Mr. Alvarez, an attorney who has handled several bankruptcy cases over the past five to seven years and who has been an attorney for over 40 years, would specifically advise a client - even a non-paying one - to commit bankruptcy fraud.[38]

Accepting Mr. Alvarez's testimony over that of the two debtors, however, does not end the matter. Evidence of the lack of intent to deceive on the part of the Landrys was presented at trial. First, Mr. Landry testified that he was concerned enough about saving his motorcycle that he would not have agreed to file bankruptcy if it meant losing his motorcycle; the court accepts Mr. Landry's testimony that he believed his ownership of the motorcycle would not be affected by the filing of the Chapter 7 petition when he signed that petition.[39] Second, both the debtors testified that it was common knowledge that they owned the motorcycle, and they did not try to hide it because everyone knew that they owned it. Third, Mrs. Landry's employer, Cameron Gamble, testified that

---

[38] Although the bankruptcy schedules state that Mr. Alvarez was paid a $500 fee for his representation of the debtors in their bankruptcy, testimony at trial showed that Mr. Alvarez and Mr. Gamble, Mrs. Landry's employer, were attorneys sharing office space, although they each had separate law practices. As such, Mr. Alvarez knew Mrs. Landry from his office, and apparently agreed to help her file her Chapter 7 petition without requiring payment of his customary fee of $500. Mrs. Landry did pay the filing fee required by the court.

[39] Although the basis for Mr. Landry's incorrect belief that the ownership of the motorcycle would not be affected by the bankruptcy filing is unclear, what the court does accept is that Mr. Landry held that belief.

everyone in the office knew about the motorcycle, and he was convinced that Mrs. Landry, who filled out the papers for the bankruptcy filing and whom he had known for a long time, never intended to defraud the bankruptcy court.[40]

The court does not find that the debtors in this case acted with the requisite fraudulent intent when filling out their schedules to support a revocation of discharge. Although the other elements of §727(a)(4)(A) are met, i.e., the debtor made a statement under oath, the statement was false, the debtor knew the statement was false, and the statement related materially to the bankruptcy case, the court does not find the debtors made the statement with fraudulent intent. Specifically, the court finds that the debtors did not appear to the court to be sophisticated in their knowledge of bankruptcy. Although Mrs. Landry worked for an attorney for several years as a secretary, both she and her former employer, Mr. Gamble, testified that his office did not take any bankruptcy cases, and that Mrs. Landry did not have any understanding of how a bankruptcy case worked. The debtors' first attorney, Mr. Alvarez, testified that he did not review the completed schedules with the debtors, nor did he give them information about exemptions. Mr. Alvarez stated that he did give Mrs. Landry a blank set of schedules to fill out and told her that she needed to fill all of them out completely. He stated that because she worked for an attorney, he thought she would know how to fill out the forms.

---

[40] As mentioned above, Mrs. Landry worked in the same office as Mr. Alvarez. Mr. Gamble's testimony that everyone in the office knew about the motorcycle included Mr. Alvarez in that group.

He met with her once the forms had been completed by Mrs. Landry, but assumed that they were correct and only checked them to see that something had been written on each form. Mr. Alvarez then signed the forms and filed them with the court on behalf of the Landrys. Additionally, according to the evidence presented at trial, the omission from the schedules concerned one item, not numerous items. When the trustee sent a letter to the debtors inquiring about the motorcycle and the tax returns, the debtors promptly consulted a new attorney and filed amended schedules within 10 to 11 days correcting the omission.

The court will address one final point raised by the trustee. The court found that the debtors' acted in bad faith at the hearing on the trustee's motion to deny the debtors the exemption on the motorcycle that they sought after amending their schedules. The trustee contends that this now requires the court to find that the debtors acted with fraudulent intent with respect to the trustee's revocation of discharge action. The court notes that its finding in the hearing denying the exemption was based on its rejection of the advice of counsel argument the Landrys did not raise until they appeared before the court, and that they bore the burden of proving. The court found that they did not bear their burden of proof at that hearing and found for the trustee. That is not the same as finding that the debtors acted with fraudulent intent sufficient to support the revocation of their discharge.

### III. Conclusion

Considering all the circumstances in this case and the highly conflicting testimony

as to what Mr. Alvarez did and did not tell the Landrys about scheduling the motorcycle, the court holds that the trustee has simply not carried his considerable burden of proof by a preponderance of the evidence to show 1) that he did not know of the alleged fraud until after the debtors' discharge was entered, or 2) that the Landrys had the requisite intent to commit fraud when they failed to list the motorcycle in the original schedules. For the reasons stated above, the trustee's complaint seeking to revoke the debtors' discharge is dismissed.

    New Orleans, Louisiana, August 25, 2006.

*J. A. Brown*
Jerry A. Brown
U.S. Bankruptcy Judge